UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMI GUEDOIR, in his individual and representative capacity as Trustee--Sami & Nadia Guedoir 2005 Trust; NADIA GUEDOIR, in her individual and representative capacity as Trustee--Sami & Nadia Guedoir 2005 Trust; and CARTHAGE TRADING, INC., a California Corporation<br><br>        Defendants. | No. 2:14-CV-00930-TLN-AC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Plaintiff Scott Johnson's ("Plaintiff") Motion for Summary Judgment. (ECF No. 14.) Defendants Sami and Nadia Guedoir, and Carthage Trading, Inc., ("Defendants") oppose Plaintiff's motion on the grounds that Plaintiff's damage claim for multiple visits to Defendants' property raise genuine issues of material fact. (ECF No. 14.) Plaintiff has filed a reply to Defendant's opposition. (ECF No. 17.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is hereby GRANTED.

///

1

### I. FACTUAL BACKGROUND

Plaintiff is a quadriplegic. (Def's Reply to Pl's Statement of Undisputed Facts ("SUF"), ECF No. 16, ¶ 1.) He cannot walk and also has significant manual dexterity impairments. (ECF No. 16, ¶ 1.) Plaintiff uses a wheelchair for mobility and drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. (ECF No. 16, ¶ 2.) On July 15, 2013, Plaintiff visited Century Furniture to allegedly buy some furniture and encountered obstructions that impaired his ability to access the store. (ECF No. 16, ¶ 6.) Defendants are the real property owners, business operators, lessors and/or lessees for the property. (ECF No. 16, ¶ 4.)

Century Furniture is a business establishment and a place of public accommodation. (ECF No. 16, ¶ 5.) Century Furniture is located at 110 W. Yosemite Ave., Manteca, California. The store has two access points, a front and rear entrance. (ECF No. 16, ¶¶ 3, 7.) Several adjacent businesses are located to the west of Century Furniture. A parking lot is located along the south side of the businesses. (ECF No. 16, ¶ 8.)

There are several parking spaces located near the vicinity of Century Furniture, which are surrounded by a continuous curb. (ECF No. 16, ¶ 10.) There is one pole mounted sign near Century Furniture and two signs on either side of the Store's rear entrance that reserve certain parking spaces exclusively for Century Furniture customers. (ECF No. 16, ¶ 11.) None of those parking spaces are marked and reserved for persons with disabilities in any way. (ECF No. 16, ¶ 12.)

There are two handicap parking spaces several stores down from Century Furniture. (ECF No. 16, ¶ 14.) The parking spaces near Century Furniture are surrounded by a continuous curb. (ECF No. 16, ¶ 13). A continuous concrete walkway is located along the south side of the Store that connects to the rear side of the adjacent places of business, including Century Furniture. (ECF No. 16, ¶ 16). This walkway is curbed in its entirety except for a steep ramp located near the first handicap parking space located some distance from Century Furniture. (ECF No. 16, ¶ 17). However, a set of exterior stairs exists between the ramp and Century Furniture, reducing the width of the walkway to a little over 2 feet so that a person in a wheelchair cannot pass. (ECF

No. 16, ¶ 18).  In addition, items such as furniture and boxes sometimes block the path beyond the stairs.  (ECF No. 16, ¶ 19).

On July 15, 2013, Mr. Johnson surveyed the parking lot and path of travel to the Store, and based on his past experience with non-accessible parking and paths of travel, determined he would be unable to safely park and access the Store.  (ECF No. 16, ¶ 20).  Because of the lack of accessible parking and path of travel to the Store, on July 15, 2013, Mr. Johnson was forced to leave without patronizing the Store which caused him difficulty, discomfort and frustration.  (ECF No. 16, ¶ 21).  Plaintiff alleges that subsequent to that incident, he was in the area on September 20, 2013, September 23, 2013, September 30, 2013, and October 31, 2013, and wanted to go to shop at the Store but was prevented from doing so based on the barriers to the entrance and lack of sufficient disabled parking.  (ECF No. 16, 22).

**II.   LEGAL STANDARD**

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

*Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

///

### III.  ANALYSIS

To succeed on a claim under Title III of the Americans with Disabilities Act of 1990 ("ADA"), "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Entes., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). At the outset, the Court notes that Plaintiff and Defendants do not dispute that: Plaintiff is disabled; Defendants own, lease, or operate a place of public accommodation; and Plaintiff was denied public accommodations by Defendants because of his disability. (*See* ECF No. 16-1 at 2 (stating "[t]here is no dispute that Defendants' property was not fully ADA compliant when Plaintiff first visited the property.").) Thus, it is clear that the Store had ADA violations, including a lack of accessible parking, obstructed path of travel and door hardware violations. The real dispute between the parties surrounds the question of whether Plaintiff is owed the damages that he seeks.

Plaintiff seeks both injunctive relief and statutory damages.  Plaintiff seeks one penalty for his encounter and one penalty for the deterrence on July 15, 2013.  Plaintiff asserts that there are no genuine issues in dispute here, and that he is entitled to two statutory awards of $4,000 under the Unruh Civil Rights Act for deterrence and his personal encounter with the access violations on January 31, 2014. (ECF No. 14-1 at 16.)  In opposition, Defendants argue that because Plaintiff "only seeks statutory damages of $8,000—presumably for two of those five visits [to the Store,] Plaintiff's calculation of damages in this case raises genuine issues of material fact[.]" (ECF No. 16-1 at 2.)

Under the ADA, plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).[1]  "A violation of the ADA is, by statutory definition, a violation of both the Unruh

---

[1] The parties do not dispute that injunctive relief is appropriate, and this Court agrees.  Therefore, the Court grants injunctive relief as to the violations detailed above.

5

1  [Civil Right's] Act and the ADA." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). Plaintiff asserts that in the present case, all these elements are met. (ECF No. 14-1 at 15–16.) This Court agrees.

As referenced above, Plaintiff is seeking statutory damages totaling $8,000: $4,000 for deterrence on July 15, 2013, and $4,000 for his personal encounter with the access violations on January 31, 2014. (ECF No. 14-1 at 16.) Plaintiff has provided the Court with a sworn declaration stating that he went to Century Furniture on July 15, 2013, personally encountered barriers causing him to leave, then was deterred from returning due to his knowledge of the barriers. (Johnson Decl., ECF No. 14-4, ¶¶ 4–6.) Plaintiff testified that on July 15, 2013, he went to the Century Furniture Store to shop but surveyed the parking and paths of travel to the store and knew from past experience that he would not be able to safely access the store:

> there was not a single parking space marked and reserved for persons with disabilities near the Store. Curbs formed the perimeter of the entire parking area near the Store, so that I would have to 1. Navigate an unramped step to access the sidewalk, 2. Navigate my wheelchair down the parking lot entrance, leaving the property to access the city sidewalk, or 3. Travel quite a long distance through the parking lot to access a steep and unsafe ramp located in front of a different store. The path of travel from that ramp to the Store was partially blocked by a set of stairs and made the width of the sidewalk so narrow that my wheelchair would not be able to pass. Because of the lack of accessible parking and path of travel, I was unable to safely park and access the Store, and was forced to leave without patronizing the Store.

(ECF No. 14-4, ¶ 5.) Plaintiff also provided sworn statements about his experience trying to

access the store again on January 31, 2014.

> 9. . . . On January 31, 2014 I still wanted to shop at the Store for furniture, so I drove to the Store determined to park and go into the Store despite the lack of disabled parking.  When I arrived, there was still no disabled parking provided at the Store but I did park in a space marked and reserved for persons with disabilities which was located in front of another store in the same lot, but some distance from the Store ("Disabled Space").  This space did not appear to belong to the furniture Store based on the distance away from it. . . .
>
> After I exited my van, I navigated my wheelchair down the parking lot entrance which was located next to the Disabled Space.  From there I accessed the public sidewalk which eventually led to the rear entrance of the Store.  In using the lot entrance, [I] feared that a car would enter or leave the lot and strike me.  In addition, it forced me to leave the property, navigate the public sidewalk and then enter the property again to reach the rear door.  I did not use the sidewalk on the property due to the stairs blocking my path.  Because of the lack of disabled parking and path of travel at the Store, I was forced to use the parking located in front of another store, and leave the property and use the public sidewalk which was dangerous and difficult.  This caused me difficulty, discomfort and frustration.
>
> 10. When I did reach the rear entrance doorway of the Store, I saw that the door had a horizontal panel style hardware that would require right grasping to operate, which I have difficulty using because of my manual dexterity impairments.  Because of this I went around the corner to use the front entrance door.  When I got to the front entrance, I saw that it too had horizontal panel style hardware that would require right grasping to operate.  Inside I could see furniture blocking the paths of travel throughout the Store and knew I would have a hard time getting around in my wheelchair.  At this point I was so frustrated I left, and was again deterred from patronizing the Store.

(ECF No. 14-4, ¶¶ 7, 9–10.)  Defendants have not provided this Court with any evidence to contradict Plaintiff's evidence, but instead tries to create a material issue of fact.  Specifically, Defendants argue that because Plaintiff sought recovery for two of the times that Plaintiff attempted to encounter the Store, but did not seek damages for the times that he was deferred from visiting the Store on September 20, 2013, September 23, 2013, September 30, 2013, and October 31, 2013, that a genuine issue of material fact existed as to Plaintiff's need for multiple visits.  In support, Defendants cite only to *Johnson v. Wayside Prop.*, Inc., 41 F. Supp. 3d 973 (E.D. Cal. 2014) [hereinafter *Wayside*], arguing that the *Wayside* court found "that a genuine issue of material fact existed as to whether a customer (Mr. Scott Johnson) who used a

7

wheelchair, attempted to mitigate his damages based on encountering barriers to access at a lumber store, precluding summary judgment in customer's favor on damages claim under California's Unruh Civil Rights Act." (ECF No. 16-1 at 2–3.) Defendants fail to recognize the distinguishing facts here compared to those of *Wayside*. In *Wayside*, the court found that the plaintiff had also asserted a claim under the California Disabled Persons Act. The court stated that because it had not yet resolved plaintiff's claim under the Disabled Persons Act, and a plaintiff may not recover damages under both the Unruh and the Disabled Persons Act, it was premature to award damages under Unruh. *Wayside*, 41 F. Supp. 3d at 981. Here, Plaintiff acknowledged within his Complaint that although he seeking damages under Unruh and/or the California Disabled Persons Act, a plaintiff cannot recover under both acts simultaneously, and thus stated that an election would be made prior to or at trial. (Compl., ECF No. 1 at 9, ¶ 2.) Plaintiff then elected to only seek damages under Unruh in his summary judgment motion.

The second important distinction is that in *Wayside*, the plaintiff sought damages for multiple visits, not one encounter and a separate award for deterrence. The *Wayside* court decided a subsequent case, *Johnson v. Patel*, No. CIV. 2:14-02078 WBS, 2015 WL 5560257, at *4–5 (E.D. Cal. Sept. 21, 2015) [hereinafter *Patel*], in which it clarified that *Wayside* was distinguishable from *Patel* because it "dealt with a plaintiff seeking $4,000 for each visit, not $4,000 for all visits and an additional $4,000 for deterrence as the plaintiff requests in this case."

Finally, in passing, Defendants opines about whether Plaintiff had a duty to mitigate in order to recover damages. (*See generally* ECF No. 16-1 at 2.) This Court is not convinced that such a duty exists. The *Wayside* and *Patel* court found that when a plaintiff is alleging multiple claims for statutory damages, Unruh requires the court to consider the reasonableness of the plaintiff's conduct in light of his duty to mitigate damages. *See Patel*, 2015 WL 5560257, at *3. In doing so, that court relied on section 55.56(h) which at that time read: "In assessing liability under subdivision (d), in an action alleging multiple claims for the same construction-related accessibility violation on different particular occasions, the court shall consider the reasonableness of the plaintiff's conduct in light of the plaintiff's obligations, if any, to mitigate damages." *Id.* The current statute, which became effective May 10, 2016, provides: "This

section does not alter the applicable law for the awarding of injunctive or other equitable relief for a violation or violations of one or more construction-related accessibility standards, nor alter any legal obligation of a party to mitigate damages." Cal. Civ. Code § 55.56(h) (West).  This section does not create a duty to mitigate, but merely states that where one exists, the section does not alter said duty.  California Civil Code § 52 which governs the denial of civil rights states:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

Cal. Civ. Code § 52 (West).  The statute is silent on a duty to mitigate and sets a statutory damages minimum of $4,000.  It is clearly established that a plaintiff need not show actual damages to recover the statutory minimum.  *See Koire v. Metro Car Wash*, 40 Cal.3d 24, 33 (1985) (stating that Unruh "provides for damages aside from any actual damages incurred by the plaintiff."); *Yates v. Sweet Potato Enterprise, Inc.*, No. C 11–01950 LB, 2014 WL 5588555, *12 (N.D. Cal. 2014) ("Proof of actual damage is not required to recover statutory minimum damages."); *McCune v. 628 Harvard Cameron, LLC*, No. 2:10–cv–02011–GEB–GGH, 2012 WL 5988880, at *4 (E.D. Cal. 2012) ("Under the Unruh Act, Plaintiff can recover the independent statutory damages of $4,000 irrespective of the actual damages he sustained.").

Defendants have failed to provide this Court with any support that Plaintiff had a duty to mitigate or to provide a factual basis for finding that Plaintiff in fact failed to mitigate.  First, there seems to be case law that supports that there is no duty to mitigate here where Plaintiff seeks recovery for only one encounter and one deterrence.  *See Langer v. McHale*, No. 13CV2721-CAB-NLS, 2014 WL 5422973, at *4 (S.D. Cal. Oct. 20, 2014), *appeal dismissed* (Sept. 1, 2015) ("And there is no requirement that Plaintiff mitigate damages when he is merely seeking statutory damages. Cal. Civil Code § 52(a).")  The general consensus of cases allow for a plaintiff to recover statutory damages for multiple visits to a facility.  *See Vogel v. Rite Aid Corp.*, No. 13–cv–288–MMM EX, 2014 WL 211789, at *11 (C.D. Cal. Jan. 17, 2014) (awarding

9

1  plaintiff a total of $12,000, or $4,000 for each of plaintiff's three visits); *McCune v. Singh*, No.
2  10–cv–02207–JAM, 2012 WL 2959436 (E.D. Cal. July 18, 2012) *motion for relief from judgment*
3  *denied*, 10–cv–02207–JAM, 2013 WL 3367515, at *5 (E.D. Cal. July 5, 2013) ("Plaintiff visited
4  the Plaza four times to patronize its stores and encountered barriers to access each time in
5  violation of the ADA, and he is therefore entitled to $16,000 in damages under the Unruh Act,
6  $4,000 for each visit."); *Freezor v. Del Taco, Inc.*, 431 F. Supp. 2d 1088, 1091 (S.D. Cal. 2005)
7  ("[T]he Court finds Plaintiff is entitled to the statutory minimum of $12,000–$4,000 for each time
8  he patronized the Restaurant").

9       Moreover, the cases that have found a failure to mitigate on a plaintiff's part have
10 involved situations where the plaintiff sought recovery of multiple visits to a non-compliant
11 facility in a short amount of time. *See Yates v. Bacco*, No. C-11-01573, 2014 WL 1089101, at
12 *15 (N.D. Cal. Mar. 17, 2014) ("One way that plaintiffs may fail to meet their duty is to make
13 multiple visits to the same facility before they could reasonably expect that the barrier was
14 corrected; this is sometimes referred to as stacking."); *Yates v. Vishal Corp.*, No. 11-cv-00643,
15 2013 WL 6073516 at *4 (N.D. Cal. Nov. 18, 2013) (finding plaintiffs were entitled to one award
16 for their first visit to the non-compliant facility, but that an increased frequency of visits just prior
17 to filing suit—up from eight times per year to three times in one month—gave rise to a question
18 of fact regarding mitigation). These cases are not applicable here where Plaintiff has limited the
19 recovery he seeks to one deterrence and one encounter, both instances five to six months apart.

20     **IV.   CONCLUSION**

21      Because Defendants have conceded liability under both the ADA and Unruh and have
22 failed to raise a genuine issue of material fact regarding the amount of statutory damages owed to
23 Plaintiff, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 14)
24 with respect to liability and damages. Thus, the Court hereby orders that Plaintiff be paid
25 statutory damages in the amount of $8,000. In doing so, the Court and Plaintiff acknowledge that
26 Plaintiff may not recover damages under the California Disabled Persons Act.

27     IT IS SO ORDERED.

28 Dated: October 28, 2016

                                      Troy L. Nunley
                                      United States District Judge