CENTER FOR DISABILITY ACCESS
Mark Potter, SBN 166317
Phyl Grace, Esq. SBN 171771
Mail: PO Box 262490
    San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
    San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
Phylg @ potterhandy.com
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Sami Guedoir**, in his individual and representative capacity as Trustee--Sami & Nadia Guedoir 2005 Trust; **Nadia Guedoir**, in her individual and representative capacity as Trustee--Sami & Nadia Guedoir 2005 Trust; **Carthage Trading, Inc.**, a California Corporation, <br><br> Defendants | **Case:** 2:14-cv-00930-TLN-AC <br><br> **Memorandum of Points and Authorities in Support of Motion for An Award of Attorney's Fees** <br><br> Date:    January 12, 2017 <br> Time:    2:00 p.m. <br> Dept:    2 -15th floor <br><br> Hon. Judge Troy L. Nunley |

1
2

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................1

II.     DEFENSE COUNSEL'S RULE 68 OFFER................................................1

III.    REASONABLENESS OF FEES.................................................................3

   A.   Hourly Rates ............................................................................................4

   B.   Hours Reasonably Expended ..............................................................11

IV.    HENSLEY FACTORS ...............................................................................12

   A.   Time and Labor Required ....................................................................13

   B.   Novelty and Difficulty of Issues.........................................................13

   C.   Skill Required to Perform Legal Service ...........................................13

   D.   Preclusion of Other Work ...................................................................14

   E.   Customary Fee ........................................................................................15

   F.   Fixed or Contingent Fee .......................................................................15

   G.   Time Limitations ....................................................................................15

   H.   Amount Involved and Results Obtained ...........................................15

   I.   Experience and Ability of Attorneys .................................................16

   J.   Undesirability of the Case ....................................................................16

   K.   Nature and Length of Professional Relationship with Client ...........17

   L.   Awards in Similar Cases. ......................................................................17

V.     LITIGATION COSTS..............................................................................17

VI.    CONCLUSION .......................................................................................18

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc.*,
   2010 WL 2889823 (M.D. Fla. 2010) ...................................................2

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ........................................... 4, 11

*Boemio v. Love's Restaurant*,
   954 F.Supp. 204 (S.D. Cal. 1997) ........................................................ 16

*City of Sacramento v. Drew*,
   207 Cal. App. 3d 1287 (1989) ................................................................4

*Copeland v. Marshall*,
   641 F.2d 880 (1980) ............................................................................ 12

*Deanda v. Sav. Inv., Inc.*,
   267 F. App'x 675 (9th Cir. 2008) .........................................................1

*Gordillo v. Ford Motor Co.*,
   2014 WL 2801243 (E.D. Cal. 2014) ............................................... 10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................... passim

*Jankey v. Poop Deck*,
   537 F.3d 1122 (9th Cir. 2008) ..............................................................3

*Johnson v. Wayside Prop., Inc.*,
   41 F. Supp. 3d 973 (E.D. Cal. 2014) ....................................................3

*Koire v. Metro Car Wash*,
   40 Cal.3d 24 (1985) ..................................................................... 15, 16

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator*,
   487 F.2d 161 (3rd Cir 1973) ............................................................. 11

ii

*Lovell v. Chandler*
   (9th Cir. 2002) 303 F.3d 1039 .............................................................. 17

*Oates v. Oates,*
   866 F.2d 203 (6th Cir. 1989) ...............................................................2

*Owens v. Ryder Services Corp.,*
   918 F.Supp. 366 (N.D. Ala. 1996) .......................................................1

*PLCM Group, Inc. v. Drexler,*
   22 Cal.4th 1084 (2000) ........................................................................5

*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino,*
   155 Cal.App.3d 738 (1984) ...................................................................4

*Serrano v. Priest,*
   20 Cal.3d 25 (1977) .......................................................................... 11

*Silvester v. Harris,*
   2014 WL 7239371 (E.D. Cal. 2014) ....................................................9

*Van Gerwen v. Guarantee Mutual Life,*
   214 F.3d 1041 (9th Cir. 2000) ........................................................... 12

*Webb v. James,*
   147 F.3d 617 (7th Cir. 1998) ...............................................................1

*Wehr v. Burroughs Corp.,*
   477 F.Supp. 1012 (E.D.Pa. 1979) ........................................................4

*Welch v. Metropolitan Life Ins. Co.,*
   480 F.3d 942 (9th Cir. 2007) ...............................................................5

*Willis v. City of Fresno,*
   2014 WL 3563310 (E.D.Cal. 2014) ................................................... 10

*Woodland Hills Residents Ass'n., Inc. v. City Council,*
   23 Cal.3d 917 (1979) ...........................................................................4

*Wyatt v. Ralphs Grocery Co.,*
   65 F. App'x 589 (9th Cir. 2003) ...........................................................1

iii

**Statutes**

42 U.S.C. § 12205 ................................................................. 3, 17

Cal. Civ. § 52(a) ................................................................. 3, 15

Fed. R. Civ. P. 65 ..................................................................2

Fed. R. Civ. P. 68(a) ..............................................................2

Fee Motion: PNAs                                    2:14-cv-00930-TLN-AC

# I.  PRELIMINARY STATEMENT

Mr. Johnson is a person with a disability. He is a quadriplegic who cannot walk and who uses a wheelchair for mobility. He sued the defendants as owners and operators of the Century Furniture in Manteca, California on the basis that the store failed to provide accessible parking, paths of travel and entrances although the law has required it for 25 years. He sued the defendants under the ADA and Unruh Civil Rights Act and prevailed on a motion for summary judgment. The plaintiff now moves the Court for an award of attorney's fees and costs.

# II.  DEFENSE COUNSEL'S RULE 68 OFFER

Plaintiff's counsel and defense counsel, Michael Welch, have had many ADA cases together. Defense counsel has crafted a Rule 68 Offer that he uses in *every* case. A copy of that offer is submitted as exhibit 4. As can be seen from the proof of service attached to that offer, defense counsel served an identical offer (changing the names only) in 19 other cases. Service of these Rule 68 Offers makes little sense.

First, costs under the ADA do not include attorney fees and, therefore, are not subject to the cost-shifting provision of Rule 68. *Webb v. James*, 147 F.3d 617, 622-23 (7th Cir. 1998), holding that *See also Owens v. Ryder Services Corp.*, 918 F.Supp. 366 (N.D. Ala. 1996) (holding that attorney fees are not shifted by Rule 68 offers in ADA actions). "Rule 68's cost-shifting device does not apply to fees under the ADA." *Wyatt v. Ralphs Grocery Co.*, 65 F. App'x 589, 591 (9th Cir. 2003); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 677 (9th Cir. 2008) ("The district court properly concluded that Rule 68 itself did not defeat [plaintiff's] eligibility for fees, as neither the ADA nor the Unruh Act defines "costs" to include attorney's fees.").

Second, a Rule 68 Offer must be framed to "allow judgment on specified terms." Fed. R. Civ. P. 68(a). The terms must be plainly spelled out because the judgment is supposed to be done by *the clerk* as a "ministerial rather than discretionary" act. *See* Fed. R. Civ. Pro 68(a); *Oates v. Oates*, 866 F.2d 203, 208 (6th Cir. 1989). "Rule 68 judgments are self-executing." *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991). But the Rule 68 Offer in this case does not *specify* any injunctive relief being offered. The Rule 68 Offer simply says, "*the injunctive relief requested in the Complaint*." Exhibit 4 (Rule 68 Offer), p. 1, lines 20-21. But there are no specifics regarding injunctive relief specified in the Complaint. The complaint identifies the violations but does not identify any of the many ways that barriers can be remediated. What, exactly, did the defense think a clerk was going to do? No injunction could have issued on that Rule 68 Offer.

Pursuant to Rule 65, every injunction must "state its terms specifically" and "describe in reasonable detail-and *not by referring to the complaint* or other document-the act or acts restrained or required." Fed. R. Civ. P. 65 (emphasis added). A "Court simply cannot enjoin a party from discriminating against individuals with disabilities and order compliance with all sections of the ADA." *Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc.*, 2010 WL 2889823, at *1 (M.D. Fla. 2010).

Not only did the defendant's offer not identify what it was actually offering to do with respect to the removal of the barriers, but plaintiff's counsel has sufficient experience with defense to know that they often disagree on their interpretation of the law. As stated in the plaintiff's memorandum of points and authorities, plaintiff's counsel and defense counsel disagreed vigorously about how to remove the barrier posed by

1  an unlawfully high transaction counter in the case of *Johnson v. Wayside*
2  *Prop., Inc.*, 41 F. Supp. 3d 973, 974 (E.D. Cal. 2014). There, the defense
3  had declared all violations remedied and, yet, the plaintiff prevailed on
4  his summary judgment motion, proving defense counsel wrong. *Id.*

5      Plaintiff's counsel has explained this to defense counsel in emails,
6  written memoranda, and briefs filed with courts. Yet defense counsel has
7  never served a different form of Rule 68 Offer. It is bizarre. In any event,
8  even if the Rule 68 Offer had not been deficient, it is not relevant in this
9  case because it offered $4,000 in damages and the plaintiff obtained
10 $8,000 on motion for summary judgment.

11     The defense never offered another penny in this case for
12 settlement. Defense counsel feels strongly about his Rule 68 Offers
13 approach.

14
15              **III.   REASONABLENESS OF FEES**

16     Under the American with Disabilities Act, attorney's fees are
17 available to a prevailing party. 42 U.S.C. § 12205. Additionally, under the
18 Unruh Civil Rights Act, a defendant "is liable for" any attorney fees"
19 suffered by any person denied the rights" provided for under Unruh. Cal.
20 Civ. § 52(a). Successful litigants are entitled to reasonable attorney fees
21 "to ensure effective access to the judicial process for persons with civil
22 rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "If
23 successful plaintiffs were routinely forced to bear their own attorneys'
24 fees, few aggrieved parties would be in a position to advance the public
25 interest by invoking the injunctive powers of the federal courts.
26 Consequently, recovery is the rule rather than the exception." *Jankey v.*
27 *Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (internal citations
28 omitted).

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1304 (1989).

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . .." *Woodland Hills Residents Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1984). Thus, there is a "requirement of an award of substantial attorney fees" in these disability access civil rights cases. *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1076 (N.D. Cal. 2010) (a disability access case involving both the ADA and Unruh Civil Rights Act).

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent. *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, 1016–18 (E.D.Pa. 1979), *modified on other grounds* at *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir. 1980). The billing statements attached as exhibit 2 meet this standard.

## A.    Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the

4

nature of the work performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1094 (2000). This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

In this case, Mr. Potter bills $350 per hour for his ADA work. Ms. Grace billed at $250 per hour. Ms. Masanque and Ms. Lockhart each billed at $200 per hour. Each of these attorneys are well qualified and have extensive experience with ADA litigation and fairly command these rates.

Mark Potter founded the Center for Disability Access, has devoted more than 95% of his practice to disability issues for almost 20 years. He was a former officer of the California's for Disability Rights, Chapter Number One—the oldest and most prestigious disability civil rights advocacy organization in California, as well as a board member of the prestigious Southern California Rehabilitation Services. He has given ADA seminars throughout the state of California and published in numerous disabled rights periodicals. He has litigated over 2,000 disability cases. His expertise and experience with ADA cases is almost unparalleled in California. He has been interviewed on CNN as an ADA legal expert. Federal District Courts outside of the Eastern District routinely award him a prevailing market rate of between $425 and $450 per hour. He has reduced that rate because the Eastern District's rates are lower than the Southern, Central and Northern Districts.

Phyl Grace has been practicing for more than twenty years. She has focused exclusively on disability access litigation for the last nine years. She has handled trials, taken depositions, drafted motions, and otherwise litigated these civil rights cases. Federal District Courts outside of the Eastern District routinely award her a prevailing market rate of between $350 and $375 per hour. She has reduced that rate because the Eastern District's rates are lower than the Southern, Central and Northern Districts.

Attorney Amanda Lockhart is qualified to bill at $200 per hour. Ms. Lockhart graduated from California Western School of Law in 2011. While in law school, Ms. Lockhart served as an elected member of the Student Bar Association and as a staff writer for the school's newspaper, The Commentary. Ms. Lockhart excelled at oral advocacy, earning the title of 'Distinguished Advocate' for her appellate oral advocacy skills. She also earned an 'Am Jur' award in the invitation-only Advanced Appellate Skills class. Ms. Lockhart has clerked for a celebrated private firm, handling matters including a multi-state elder abuse case as well as a case involving novel theories of fraud and negligence as they relate to international surrogacy agreements. Ms. Lockhart also served as a student liaison for the Dean of Admissions. Federal District Courts outside of the Eastern District routinely award her a prevailing market rate of $250 per hour. She has reduced that rate because the Eastern District's rates are lower than the Southern, Central and Northern Districts.

Attorney Isabel Masanque is qualified to bill at 200 per hour. She graduated cum laude in 2012 from California Western School of Law. During law school, Ms. Masanque received an AmJur award in Public Interest law and was a member of California Western's Pro Bono Honors

1   Society. She was also a writer and editor for California Western's two law
2   review journals. Ms. Masanque's article, "*Progressive Realization Without*
3   *the ICESCR: The Viability of South Africa's Socioeconomic Rights*
4   *Framework, and its Success in the Right to Access Health Care*" was accepted
5   for publication in California Western's International Law Journal. She was
6   also published in the Bulletin of Health Law and Policy in 2012 for her
7   article on the Generic Drug User Fee Act. Ms. Masanque also displayed
8   her oral advocacy skills during law school, becoming a semi-finalist at
9   California Western's Legal Skills Appellate Competition, and successfully
10  defending a defendant in a criminal jury trial during her internship at the
11  San Diego County Public Defender's Office, under the supervision of a
12  Deputy Public Defender through the Practical Training of Law Students
13  Program. Ms. Masanque began her career at the Center for Disability
14  Access in 2012 as a legal intern where she participated in and was trained
15  extensively on handling discovery issues. She was then admitted to the
16  Bar in 2013, and continues to oversee discovery matters as an attorney at
17  the firm. Ms. Masanque has reduced her standard hourly rate because the
18  Eastern District's rates are lower than the Southern, Central and
19  Northern Districts.

20          Plaintiff's attorneys' disability rights work has helped to shape ADA
21  law with numerous, precedent setting opinions including, but not limited
22  to the following published cases: *Lozano v., C.A. Martinez Family Ltd.*
23  *Partnership*, 129 F.Supp.3d 967 (S.D. Cal. 2015); *Fortyune v. City of*
24  *Lomita*, 766 F.3d 1098 (9th Cir. 2014); *Cortez v. City of Porterville*, 5
25  F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, --
26  F.Supp.2d -- , 2014 WL 4276164 (E.D. Cal. 2014); *Daubert v. City of*
27  *Lindsay*, 41 F.Supp.3d 973 (E.D. Cal. 2014); *Munson v. Del Taco, Inc.*, 46
28  Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d

309 (Cal. App. 4th 2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000).

In another case, plaintiff's counsel found and hired one of the more prominent fee experts in California to establish the market rate in Sacramento for plaintiff's attorneys. Mr. John D. O'Connor's declaration is attached as exhibit 5. He identifies his methodology and data and finds that "the most appropriate rate for the partners' services is $475 per hour" and that plaintiff's counsel's requested rates for their senior attorneys at $425 per hour are reasonable in "any California market." Exhibit 5 (Dec of O'Connor), ¶ 24 & 41. Nonetheless, plaintiff's counsel has lowered his rate for this motion.

Plaintiff's counsel also respectfully requests this Court consider the Real Rate Report, which holds itself out as "the industry's leading data-driven benchmark report for attorney rates and matter costs." The data used for the Real Rate Report "include more than $16.2 billion in fees billed for legal services in the United States during the seven-year period from 2007 to 2013. The data comprise fees paid by 90 companies to more than 5,600 law firms and more than 206,000 timekeepers." Exhibit 6 (Real Rate Report), p. viii. The goal of the Real Rate Report was to

provide a more objective analytic to determining the market rate for a particular attorney in a particular location for a particular type of work. The Real Rate Report condenses its data and analytics into a working model to help firms, clients and courts to determine an equation for determining the fair market rate. That model is page 29 of the Real Rate Report and the last page of the attached exhibit 6. According to that model, plaintiff's counsel's hourly rates are fair and reasonable.

Looking at the model and equation of page 29 of that Report, Mark Potter's hourly rate would be assessed as follows: (1) he starts at $190.65 because he is with a firm of less than 50 attorneys. (2) We add $61.66 for the fact that the work is to be assessed with Sacramento as the locale. (3) We add $86.24 for the twenty years of experience that he has. (4) We add $97.33 for the fact that he is a partner. There are no modifications for "practice area," "client industry," or "other factors." Thus, the final hourly rate would be $435.88. Ms. Grace who has 20 years of experience, but is not a partner, would have an hourly rate of $338.55 in the Eastern District. And, finally, Amanda Lockhart and Isabel Masanue would have hourly rates of $256.07. Nonetheless, each of these attorney's has lowered the requested hourly rates.

An excellent discussion about hourly rates within the Eastern District of California is found in *Silvester v. Harris*, 2014 WL 7239371 (E.D. Cal. 2014). *Silvester* involved constitutional/civil rights claims with an attorney fee shifting provision where the prevailing plaintiff's attorneys sought an award of attorney's fees. The plaintiff's attorney sought fees at $640 per hour. *Id*. at *1. The defense argued that $350 per hour was the market rate in the Eastern District for attorneys with similar experience. *Id*. The district court cited several previous decisions where a substantial inquiry and survey had been conducted to identify the market

rate. *Id.* at *4 (citing to *Willis v. City of Fresno*, 2014 WL 3563310 (E.D.Cal. 2014) and *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. 2014)). The district court found that the "generally accepted' hourly rates for "competent experienced attorneys" is between $250 and $380 per hour, with the highest rates reserved for competent attorneys with more than 20 years of experience. *Id.* For competent practitioners with less than ten years of experience, the accepted range was between $175/$200 and $300 per hour. *Id.*

In the present case, plaintiff's requested hourly rates fall within such Eastern District market rates. Mark Potter, founder of the Center for Disability Access, who has as much experience as any attorney practicing ADA law and more than 20 years in the field, seeks $350 per hour. This is a fair market rate. Phyl Grace with more than 20 years of experience seeks $250 per hour. This is the <u>bottom</u> of the market rate for competent attorneys with 20 plus years of experience. Amanda Lockhart and Dennis Price – all with less than 10 years of experience, but entirely devoted to ADA litigation – seek $200 per hour. This is at the <u>bottom</u> of the market.

Not only are plaintiff's counsel's rates fully consistent within their market but they should expect to receive full compensation. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

1    *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010). "Indeed,

2    were it not for the efforts of those attorneys willing to undertake the

3    representation of ADA plaintiffs, there would be little, if any,

4    enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC*,

5    420 F.Supp.2d 1346, 1349 (S.D.Fla. 2006).

6         Based on the evidence of market rate, the testimony of expert

7    witness O'Connor, and the public interest in encouraging the private bar

8    in enforcing the ADA, plaintiff's counsels' rates should be approved by

9    this court.

10

11    **B.    Hours Reasonably Expended**

12         As the first step in the calculation of an equitable award, the Court

13    should determine the number of hours reasonably expended in this

14    litigation: The starting point of every fee award, once it is recognized that

15    the court's role in equity is to provide just compensation for the attorneys,

16    must be a calculation of the attorneys' services in terms of the time he has

17    expended on the case. Anchoring the analysis to this concept is the only

18    approach that can claim objectivity, a claim which is 'obviously vital' to

19    the prestige of the bar and the courts." *Serrano v. Priest*, 20 Cal.3d 25, 49

20    (1977), *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator*, 487

21    F.2d 161 (3rd Cir 1973).

22         Furthermore, only hours found to have been reasonably expended

23    may be allowed. Plaintiff is not entitled to an award of attorney's fees for

24    hours which were duplicative, unproductive, excessive or otherwise

25    unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise

26    "billing judgment" in the preparation of the attorney's fee application;

27    '[h]ours not properly billed to one's client are not properly billed to one's

28    adversary pursuant to statutory authority". *Copeland v. Marshall*, 641 F.2d

880, 891 (1980) (en banc) (emphasis in original), *quoted* in *Hensley*, 461 U.S. at 484. A fair award is the product of reasonable hours and reasonable rates, and represents an objective basis for an initial determination of attorney's fees.

The case has not seen a lot of work. Nonetheless, the case reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, court filings, discovery, the motion for summary judgment, this motion and the other trappings of a litigated case. Plaintiff's attorneys will have expended about 50 hours when this fee motion is argued. As is obvious from the billing statement (exhibit 2), there has been no overbilling in this case. All of the hours submitted to the court in the accompanying declaration of Mark Potter and the attached billing were reasonably incurred in the prosecution of this case.

## IV.   HENSLEY FACTORS

In *Hensley v. Eckerhart*, (1983) 461 U.S. 424, the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or "exceptional" cases only. *Id*. at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946. Additionally, the *Hensley* court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it. Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor.  Plaintiff seeks no modification of the lodestar.

## A.     Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint.  The case was not over litigated and plaintiff's counsel expended less than a full work week. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

## B.     Novelty and Difficulty of Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

## C.     Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA. There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable."  In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the

California Code of Regulations requirements to public accommodations which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law.  This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.

**D.    Preclusion of Other Work**

Plaintiff's attorneys have spent more than 40 hours in prosecuting this case. That time could not be used, simultaneously, for other cases or other clients.  Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.    Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.    Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case.  Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G.    Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

### H.    Amount Involved and Results Obtained

Under the Americans with Disabilities Act, there are no damages available. The only remedy is injunctive relief. Plaintiff informally obtained the remedial relief because the defendants agreed to remedy the violations. Additionally, under his Unruh Civil Rights Act cause of action, the plaintiff was entitled to damages. Cal. Civ. § 52(a).  It's difficult to measure the "damage" caused by denial of access.  Thus, the Unruh Civil Rights Act has a minimum that a defendant must pay.  In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind." *Koire v. Metro Car Wash*, 40 Cal.3d 24, 33 (1985). The Court stated, "by passing the Unruh Act, the Legislature established that

15

arbitrary sex discrimination by businesses is per se injurious. Section 51 provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for every violation of section 51, regardless of the plaintiff's actual damages." *Id.* at 33. The minimum damage award that was in effect for the plaintiff's case was $4,000. Courts just don't award that much money for violations that do not involve impact injury. For example, in one of the only published decision to actually identify a damage award: *Boemio v. Love's Restaurant*, 954 F.Supp. 204 (S.D. Cal. 1997), the court held a bench trial, found for the plaintiff, and awarded $1,000 (the minimum) although the plaintiff had to urinate in the parking lot. This case was no different from other access denial cases with respect to damages. It simply never involved large sums of money. The $8,000 damage award and the remedial relief obtained during the case, means that the plaintiff recovered virtually 100% of what he could recover.

## I.    Experience and Ability of Attorneys

See discussion under "Hourly Rates" above.

## J.    Undesirability of the Case

This case, like many small dollar civil rights cases, is low on the desirability scale.  The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning. It is usually big business and insurance companies on the other side.

**K.    Nature and Length of Professional Relationship with Client**

The Center for Disability Access has no relationship with Scott Johnson other than in representing him in his ADA/Unruh claims.

**L.    Awards in Similar Cases.**

This matter is discussed above.

## V.   LITIGATION COSTS

The plaintiff seeks $1,940 in litigation expenses or costs. This includes the investigation costs of $400 and the expert's invoice of $1540.50 (attached as exhibit 3). Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative and expert costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rpt. No. 101-485(II) at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").

*Lovell v. Chandler,* 303 F.3d 1039, 1058 (9th Cir. 2002). "The federal statute, unlike the state statutes, explicitly provides for not only attorney's

17

fees but also litigation expenses and costs." *Saldana-Neily v. Taco Bell of Am., Inc.*, 2008 WL 793872, *3 (N.D. Cal. 2008).

## VI.   CONCLUSION

The plaintiff respectfully requests that his motion be granted and he be awarded $18,075.50

Dated: November 22, 2016        CENTER FOR DISABILITY ACCESS

By: /s/ Mark Potter                   .
Mark Potter, Esq.
Attorneys for Plaintiff

Fee Motion: PNAs                                          2:14-cv-00930-TLN-AC