UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SCOTT NORRIS JOHNSON

Plaintiff,

vs.

J&C M HOLDING, INC., a California corporation; and WAYSIDE PROPERTY, INC., a California corporation

Defendant.

CASE NO. 2:13-cv-01610-WBS-AC

DECLARATION OF JOHN D. O'CONNOR

I. **QUALIFICATIONS AND BACKGROUND**

I, John D. O'Connor hereby declare and state as follows:

1. I am an attorney and licensed to practice law in all courts in the State of California, and have been so licensed since December 1972. I am currently the principal of O'Connor and Associates, a law firm consisting of myself and several associates that specializes in commercial litigation. I have forty-one years of significant trial experience, including current jury trial experience. In addition to my litigation practice, I have been retained as an attorneys' fee expert on approximately fifty occasions, and served as a consulting expert on many more occasions.

2. The following is a brief summary of my background and qualifications.

3. I attended The University of Notre Dame in South Bend, Indiana, where I

graduated *magna cum laude* in 1968. In 1972, I graduated *cum laude* from the University of Michigan Law School, where I was a member of the *Order of the Coif* and Associate Editor of the Michigan Law Review. I was admitted to the California bar in 1972.

4. After being admitted to the California bar, I held numerous positions at private law firms where my practice focused on trial litigation. In 1972 and 1973 I was an associate with the trial firm of Belli, Ashe and Choulos, where I assisted Mr. Melvin Belli in the trial of several large cases, and tried three cases on my own. From January 1974 through December 1979, I was an Assistant United States Attorney for the Northern District of California in San Francisco. In that capacity, I tried white-collar criminal cases as well as a variety of civil matters. In 1980 and 1981 I was a senior associate at the prominent San Francisco firm of Brobeck, Phleger and Harrison.

5. From 1982 through 2001, I was a principal and managing partner of the law firm of Tarkington, O'Connor & O'Neill, where our clients were mainly insurance companies, corporate risk management departments, and governmental entities, such as the FDIC, FSLIC, RTC, NCUA, and the United States government. From late 2001 through July 2006, I was employed with the San Francisco firm of Howard Rice as a Special Counsel and Director, practicing within the litigation department. At Howard Rice, litigation work consisted of business litigation, tobacco defense litigation on behalf of R.J. Reynolds Tobacco Company, intellectual property litigation, and a variety of commercial cases.

6. Since July 2006, I have practiced on my own with several associates under the name of O'Connor and Associates. My practice continues to focus on complex business litigation, including an active trial practice. In my career I have tried over seventy civil and criminal cases in state and federal jurisdictions throughout the country.

7. In 1982 I began managing the Tarkington office and as our firm quickly grew to over eighty lawyers, I regularly kept abreast of billing standards in the community, and regularly subscribed to specialized publications geared to law firm management, such as the Altman and Weil annual reports and the monthly published Partners' Report. I also regularly reviewed more

1  widely published legal periodicals.

2      8.   As written billing guidelines became in vogue for institutional clients in the mid-
3  eighties, I participated heavily in working with our institutional clients in government, insurance
4  and other large businesses to establish and implement practical billing standards. I regularly
5  consulted with these clients about their perception of the positive and negative in our billings,
6  and where appropriate, remedied the same.

7      9.   I have kept abreast of the billing rates in the Bay Area, California, and generally
8  throughout the country since 1982. Because we represented clientele in different business and
9  governmental sectors, it was important to me to be conversant about rates throughout the
10 litigation field ranging from premium to lower, more commoditized rates.

11     10.  Because our practice at the Tarkington firm often involved coverage, legal
12 malpractice, and reinsurance and excess monitoring work, we reviewed the billings of a wide
13 variety of firms in our regular practice, including premium-rate billings, lower, highly negotiated
14 insurance defense charges, and standard business litigation charges with rates falling between
15 these two groups.

16     11.  At Howard Rice, we kept informed about both premium rates in the area and rates
17 charged by the wider sector of, more market-driven business firms, so that we could in turn
18 appropriately set ours on an annual basis. Because we did work throughout California, our
19 surveys involved both Northern California and Southern California, as well as national firm
20 rates. It has been my experience that the rate structure of the San Francisco Bay Area is virtually
21 identical to that in the greater Los Angeles area.

22     12.  In addition to my extensive trial practice, I have been retained as a fee expert on
23 approximately fifty occasions, and have acted as a consultant on many more occasions. In
24 addition, I have significant experience dealing with complex attorneys' fees issues in other
25 contexts, such as litigating fees in a number of civil rights and other "fee shifting" cases, and
26 being charged by the United States government, as an Assistant U.S. Attorney, to assess and
27 negotiate significant class counsel fees for several different firms who had pursued and obtained
28

1 a settlement in a very large, class action labor discrimination case against the Naval Air Rework
2 Facility in Alameda.
3      13.    Although I have been involved in a significant amount of legal fee review,
4 negotiation, and litigation since 1977, my involvement in legal fee dispute work increased
5 significantly in 1989. In that year, I was the Tarkington partner in charge of our work with failed
6 and failing financial institutions on behalf of the FDIC, FSLIC, RTC, and NCUA. At that time,
7 we had performed extensive work in connection with the failed Golden Valley Bank, Turlock,
8 California, then in Receivership under the aegis of the FDIC. The insurance carrier for the bank
9 insisted that we advise the government to release the insurance carrier from its defense
10 obligations with a nominal payment. After our refusal, the insurance company subjected the
11 Receiver and our firm to numerous audits in an unsuccessful attempt to force the government to
12 release the carrier from its obligations. At this point I necessarily became immersed in the
13 various billing standards prevalent in the community.
14      14.    During these years of legal fee disputes, I spent the majority of my time dealing
15 with the developing field of legal "auditing" and related litigation. As a result, I gained a wide
16 knowledge of auditing practices, prevailing billing standards, and approaches employed by legal
17 fee experts, auditors, and litigators.
18      15.    Because our litigation with the carrier and its auditors were widely known in the
19 legal community now confronting fee auditors, during the years 1991 through 2001, I consulted
20 with numerous law firms throughout the country who were seeking my advice on audit criticisms
21 leveled against their practices, almost invariably involved in large fee disputes. I also consulted
22 less frequently, but on numerous occasions, with fee payors in fee disputes. I continue this work
23 as a subspecialty of my litigation practice through the present time. I am a member of and
24 lecture before the National Association of Legal Fee Attorneys, a society dedicated to both
25 continuing education and development of legal fee billing standards.
26      16.    In 2005-2006, I served as a JAMS arbitrator on an asbestos fee dispute involving
27 over $2 million in billings.
28

17. I have been retained on over 50 occasions to provide written and/or oral attorney fee opinions. For example, in 2010, I was an attorneys' fees expert retained by class counsel in *Duran v. U.S. Bank*, an employment class action case tried before Honorable Robert J. Freedman, Alameda County Superior Court, in which class counsel was awarded $18.8 million dollars. Judge Freedman based certain findings favorable to class counsel on "persuasive expert testimony expressed by John D. O'Connor."

18. I recently testified in a trial in San Francisco Superior Court, *J.R. Marketing, L.L.C. v. Hartford Casualty Ins. Co.*, Case No. CGC-06-449220, and was accepted as a qualified expert by Judge Lynn O'Malley Taylor. In that case I testified regarding $12,000,000 in legal fee billings allegedly payable by an insurer for defense work by a national law firm. I also recently testified by Declaration in U.S. District Court for the Northern District of California in *Moore v. Verizon*, Case No. 09-1823 SBA (JSC), and *U.S. v. Nosal*, Case No. 3:08-CR-00237-EMC.

19. I have over forty years of significant litigation experience in labor law cases, most dealing with wrongful termination and employment discrimination, and defended a number of labor cases, including class actions and individual cases involving both wrongful termination and employment discrimination for the Civil Division of the U.S. Attorneys' Office. While with the Tarkington firm, I tried an Alameda County disability discrimination case in 2001 and agreed to pay rates to the prevailing plaintiffs of over $400 per hour.

20. Beginning in early 1973 when I tried a consolidated multi-plaintiff wage and hour case in San Francisco municipal court, I have sporadically handled wage and hour cases. I successfully mediated a consolidated wage and hour case involving eight plaintiffs. I was the attorneys' fees expert in the first class action wage and hour case tried to a judgment in California, *Duran v. U.S. Bank National Assn.* (2012) 203 Cal.App.4th 212, tried in Alameda County in 2011, and recently remanded by the Supreme Court to Alameda County for retrial.

21. In the *Duran* case, Judge Freedman accepted my opinion of the applicable hourly rates of Edward Wynn as being $640 per hour, noting in his opinion that he relied on the

undersigned for guidance in this regard:

The Court finds that Plaintiffs have presented extensive evidence that the hourly rates their attorneys have requested are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for comparably complex litigation. CHMC, 97 Cal.App.4th 740, 783. That evidence includes: ... (5) *persuasive expert testimony presented by Mr. John D. O'Connor... Based on the evidence before the Court including declarations submitted in support of Plaintiffs' Motion*, the Court finds that Mr. Wynne is highly regarded among his peers for his skill, experience, and tenacity. The Court finds that given Mr. Wynne's experience, demonstrated skill, and reputation, his $640 hourly rate is well within the range of rates charged by and awarded to similarly experienced and qualified attorneys in this area. (Emphasis added. December 12, 2010 Order, pp 26-27)

In marked contrast to the Court's findings with respect to Mr. Schratz, the Court finds Mr. O'Connor's declaration to be considerably more persuasive in assessing the relevant issues before this Court. The Court finds Mr. O'Connor's opinions related to the lodestar analysis to be useful, insightful and well-reasoned. (December 12, 2010, p 30)

22. Based upon the foregoing, I believe I am qualified to opine on the rates applicable in this case.

## II. SUMMARY OF OPINIONS

23. The range of rates which could be applied to the partners working on this case (Mr. Potter, Mr. Ballister, and Mr. Handy) range from $450 per hour to $650 per hour.

24. Based upon a variety of factors, I opine that the most appropriate rate for the partners' services is $475 per hour. The rate of $425 they seek here is therefore reasonable.

## III. DISCUSSION

25. A rate of $450 to $500 per hour is what I would determine to be the standard rate for a twenty year attorney at a reputable firm in the Northern California legal market, without any premium for perceived exceptional talent of the lawyer, exceptional reputation of the individual or of the firm, or of specialized knowledge of the type of litigation or the issue in the case at hand.

26. The $650 rate, at the other end of the spectrum, is applicable to a twenty year lawyer with exceptional talent or exceptional firm reputation, for special skill, as adjusted slightly downward from the San Francisco-based rates, such adjustment based on location.

27. In *Johnson v. Sears, et. al., Sacramento Superior Court,* Case No. 34-2009-

1  00054053, I opined in a labor case that attorney Christopher Whelan merited an hourly rate of
2  $680 per hour for his services in Sacramento County. The Court per Judge Kevin Culhane
3  agreed with my assessment and in the Court's opinion noted its reliance upon the opinion of the
4  undersigned. In *Duran v. U.S. Bank*, as noted above, Judge Freedman accepted the $640 rate for
5  Mr. Wynn, a twenty year lawyer with experience then equivalent to the partners' experience
6  now.
7     28.    In each of the foregoing cases, I found Mr. Whelan and Mr. Wynn to be so highly
8  skilled and the cases involving such exceptional difficulty that those rates at the higher end of the
9  spectrum were appropriate.
10    29.    In *Syers Properties v. Ann Rankin* 226 Cal.App.4th 691 (2014), the Court
11  awarded, and the Appellate Court upheld, in a legal malpractice case involving a prevailing party
12  fee's clause, an award of $517 per hour for twenty-year lawyer, John Feeney, even though his
13  actual rate, undisclosed in the opinion, was admittedly lower under his contract with the
14  malpractice insurance carrier. I am familiar with Mr. Feeney and his firm, and his skills, abilities
15  and reputation. This award was based upon 2011-2012 rates, where the DOJ Laffey matrix
16  would award $495 per hour, adjusted for higher cost of living in the Bay Area. Attached hereto
17  as **Exhibit A** is a true and correct copy of the Department of Justice's Laffey Matrix for the years
18  of 2003-2014.
19    30.    Recently, in *Trujillo v. Tri City Storage*, Case No. SCV0027875, venued in Placer
20  County, Judge Garbolino awarded John Stralen $495 per hour in a wage and hour case,
21  consistent with my opinion. Mr. Stralen is and was a twenty year lawyer working in the
22  Sacramento area, with a level of skill and sophistication comparable to the partners here.
23    31.    In addition, in this matter I considered the Laffey Matrix, relied upon by the Court
24  in *Syers, supra*; *In re Chiron Corporation Securities Litigation*, 2007 WL 4249902, (N.D. Cal.
25  Nov. 30, 2007).
26    32.    The Laffey Matrix was developed in the case of *Laffey v. Northwest Airlines, Inc.*
27  572 F.Supp. 354, 371 (D.D.C. 1983), in the District Court for the District of Columbia, precisely
28

1  for the purpose of determining reasonable fees in cases where an appropriate billable rate needed
2  to be determined. Since the date of the *Laffey* decision there have evolved two separate *Laffey*
3  Matrices. One matrix adjusts the fees in the *Laffey* case for an inflationary rate applicable to
4  legal services. The other *Laffey* matrix adjusts the fees on the *Laffey* case based upon the
5  general inflation rate, and not the inflation rate for legal services. The latter *Laffey* Matrix is
6  maintained by the Department of Justice in Washington, D.C.
7         33.    Because of the difference in inflation rates, the rate applicable for a lawyer of
8  twenty years experience, such as the billing partners in this case, varies significantly from one
9  matrix to the other. In the Department of Justice matrix, a twenty-year lawyer would in 2014
10 merit $520 per hour, while in the *Laffey* Matrix updated for legal market adjusted for legal
11 market inflation, that rate is $770 per hour. A sixteen year lawyer like Mr. Handy would merit
12 $460. Attached hereto as **Exhibit B** is a true and correct copy of the Department of Justice's
13 *Laffey* Matrix for the years of 2014-2015.
14         34.    I am well aware of the rates charged by labor specialty firms such as the firm of
15 Jackson Lewis, a nationwide labor and employment litigation firm, and Littler Mendelson,
16 another employment and labor litigation firm. I am also familiar with the rates of Downey
17 Brand, an excellent Sacramento firm. The rate charged by the partners is below these rates.
18         35.    Based upon the foregoing, in my opinion, the more senior partners' services are
19 appropriately recompensed under the lower of the two *Laffey* matrices, for a fee of $520 per
20 hour. In accordance with *In re Chiron, supra*, and *In re HPL Techs., Inc., Secs. Litig.* 366 F.
21 Supp. 2d 912, 921-22 (N.D. Cal. 2005), however, this rate should be adjusted to reflect the cost
22 of living in Sacramento as opposed to that of Washington, D.C. To make this adjustment, I have
23 relied on the 2014 federal locality pay differentials based on federally compiled cost of living
24 data. The 2014 federal locality pay differentials may be found at http://www.opm.gov/policy-
25 data-oversight/pay-leave/salaries-wages/2014/general-schedule/. The 2014 pay tables show that
26 the Washington-Baltimore area has a +24.22% locality pay differential, while the Sacramento
27 area has a differential of +22.20%. Applying the *In re HPL* formula, the appropriate rate for

DECLARATION OF JOHN D. O'CONNOR
8

1  Sacramento is -1.6%. Thus, the cost of living adjustment to the $520 Laffey matrix figure yields
2  a rate of $512 per hour, and the adjustment of the $460 rate yields $453. These rates are quite
3  comparable with the rates of Jackson Lewis; the rates of Littler Mendelson; and the rates of the
4  Downey Brand firm.
5      36.  I believe that the partners' rate must be discounted, in comparison to the rate
6  awarded to Mr. Whelan, because Mr. Whelan was and is a lawyer of such exceptional skill and
7  talent that he is deserving of the highest rates.
8      37.  In explaining my recommendation of a rate of $640 per hour for Mr. Wynn in the
9  *Duran* case, I note that he navigated himself and his class through a thicket of extremely
10 challenging issues, in the first class action wage and hour case ever tried in California, now as
11 noted, back for retrial. The case involved highly complex issues of statistical sampling and of
12 determination of damages. Because of these distinguishing factors, I have slotted the partners
13 here at a rate below these two exceptional litigators in complex cases.
14     38.  This case was relatively straightforward, so no enhanced rate should be awarded,
15 in my view, for complexity.
16     39.  On the other hand, this litigation is of the type frequently handled by labor
17 departments of the biggest firms, as well as the labor specialty firms such as Littler and Jackson
18 Lewis at their normal rates.
19     40.  Accordingly, standard rates for reputable firms in the labor litigation field should
20 apply.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

41. The partner rates here sought of $425 per hour are reasonable in any California market. The associate rates are reasonable and a bit below standard associate rates prevalent throughout the state.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of October 2014 in San Francisco, California.

_____
JOHN D. O'CONNOR

# Exhibit A

LAFFEY MATRIX -- 2003-2014
(2009-10 rates were unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 | 12-13 | 13-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 | 495 | 505 | 510 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 | 435 | 445 | 450 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 | 350 | 355 | 360 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 | 285 | 290 | 295 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 | 240 | 245 | 250 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 | 140 | 145 | 145 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "*Laffey Matrix*" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g.*, *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995).



Exhibit B

# LAFFEY MATRIX – 2014-2015

Years (Rate for June 1 – May 31, based on prior year's CPI-U)

| Experience | 14-15 |
|---|---|
| 20+ years | 520 |
| 11-19 years | 460 |
| 8-10 years | 370 |
| 4-7 years | 300 |
| 1-3 years | 255 |
| Paralegals & Law Clerks | 150 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix," or the "United States Attorney's Office Matrix." The various "brackets" in the column headed "Experience" refer to the years following the attorney's graduation from law school, and are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). Thus, the "1-3 years" bracket is generally applicable to attorneys in their first, second, and third years after graduation from law school, and the "4-7 years" bracket generally becomes applicable on the third anniversary of the attorney's graduation (*i.e.*, at the beginning of the fourth year following law school). *See Laffey*, 572 F. Supp. at 371; *but cf. EPIC v. Dep't of Homeland Sec.*, No. 11-2261, ___ F. Supp. 2d ___, 2013 WL 6047561, *6 -*7 (D.D.C. Nov. 15, 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp.2d 56, 60-61 (D.D.C. 2013) (same).

3. The hourly rates approved in *Laffey* were for work done principally in 1981-82. The matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of

prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia have relied on the United States Attorney's Office Matrix, rather than the so-called "Updated Laffey Matrix," as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007). *But see Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000). The United States Attorney's Office does not use the "Updated Laffey Matrix" to determine whether fee awards under fee shifting statutes are reasonable.